```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
THE ESTATE OF FRANCIS LUCIEN HEILBUT,    :
by Executrix Gena Rangel,                :
                                         :
                    Plaintiff,           :
                                         :
          -v-                            :
                                         :
THE CITY OF NEW YORK; THE NEW YORK CITY  :   04 CIV. 4332 (DLC)
POLICE DEPARTMENT; JOHN CARROLL, Police  :
Sgt.; JOHN DOE; RICHARD ROE; and JANE    :   OPINION and ORDER
DOE, said names being fictitious, their  :
true names and identities unknown,       :
intended to describe and identify three  :
arresting police officers employed by    :
and acting on behalf of the New York     :
City Police Department,                  :
                                         :
                    Defendants.          :
-----------------------------------------X
```

Appearances:

For Plaintiff:
Robert Parker
Law Office of Robert Parker
410 Park Avenue, Suite 1530
New York, NY 10022

For Defendants:
Hillary Frommer
Corporation Counsel
City of New York
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

   Plaintiff Francis Heilbut ("Heilbut") brings this action under 42 U.S.C. § 1983 ("Section 1983") and New York law to recover damages for the alleged violations of his rights by New York City police officers in connection with a February 5, 2004 incident where he was handcuffed and taken to a hospital for

1

psychiatric evaluation.  Heilbut contends that he was detained without probable cause and that the police officers used excessive force.  The City of New York (the "City") and the named officer defendants have moved for summary judgment.  Their motion is granted.

Background

The following facts are taken in the light most favorable to plaintiff unless otherwise noted.  In 1990, Monica Heilbut initiated divorce proceedings against her husband Francis Heilbut, the plaintiff in this suit.  Those proceedings were contested.  A judgment of divorce was granted in 2000, and ultimately in April 2003, the Court of Appeals dismissed in part and denied in part Heilbut's appeal.  At that time, Heilbut owned an apartment at 685 West End Avenue in Manhattan.  His mother had lived there until her death in 1984, after which time Heilbut began to use the apartment as an office.  Pursuant to the divorce proceedings, the apartment was ordered to be sold, with proceeds from the sale divided equally between Heilbut and his former wife.  Heilbut contested the sale and distribution, and Monica Heilbut retained an attorney, Stephanie Cooper ("Cooper"), in connection with the enforcement of the distribution order.

On January 16, 2004, Justice Laura Visitacion-Lewis of the New York Supreme Court issued an order authorizing Cooper to change the locks and remove the contents of the apartment if Heilbut failed to provide keys to Cooper and remove the contents

himself.  The order also enjoined Heilbut from "engaging in any further appeal or instituting any further motion in this or any matter pending before this or any court without the express permission of this court."  At a court appearance on February 4, 2004, Justice Visitacion-Lewis verbally stated that Cooper was to oversee the removal of the contents of the apartment the following day.  The order was reduced to writing and a copy was provided to Heilbut.  Both Heilbut and his personal assistant, Gena Rangel ("Rangel"), were made aware that the contents of his apartment would be removed on February 5, pursuant to the court order.

On the morning of February 5, at approximately 8:45 a.m., Cooper went to the apartment with a locksmith, a security guard, and movers.  Cooper had retained a security guard because she believed, based on Heilbut's unruly behavior during the previous day's court appearance, that Heilbut might become unruly or dangerous during the move.[1]  Rangel was present at the apartment, and refused to allow Cooper in, even after Cooper explained the

---

[1] The plaintiff's 56.1 Statement denies the statements relating to Cooper's reasons for retaining a security guard, but points to no contradicting evidence.  There are many instances in the plaintiff's 56.1 Statement where the plaintiff simply denies statements made by the defendants without providing any evidentiary support, particularly where the statements relate to actions that occurred outside of his presence.  Where the plaintiffs have denied statements without providing any evidentiary support for a contrary finding, all of the facts set forth in defendants' statements that are supported by admissible evidence are deemed admitted.  See Local Civil Rule 56.1; see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

court order.[2]  Cooper then called 911 because the locksmith told her that he would not do any work unless the police were present. Subsequently, Sergeant Carroll ("Carroll") and another officer arrived at the scene in uniform and in a marked police vehicle. Cooper showed Carroll the court order, and he determined that it was valid.[3]  Carroll spoke to Rangel, and Rangel reluctantly agreed to let the movers into the apartment.  Carroll and the other officer then left the scene, and the locksmith changed the locks and the movers started removing pieces of furniture from the apartment.[4]  Cooper remained outside of the apartment while the movers were removing the contents.

At approximately 12:20 p.m., Cooper was seated in the driver's side of the back seat of the security vehicle, near the window closest to the street.  The car was parked on West End Avenue at the curb.  From the car, Cooper saw Heilbut across the street.  Heilbut had come to the apartment because Rangel had called him on the telephone and told him about the locksmith.

---

[2] The plaintiff's 56.1 Statement contends the conversation between Cooper and Rangel is inadmissible hearsay.  This and several other statements to which the plaintiff objects are admissible to the extent that they are offered for the fact that the statement was made, and/or as relevant state of mind evidence.

[3] The plaintiff's 56.1 Statement denies that it was a valid court order because it was not produced by the movant, but provides no evidence to otherwise challenge its validity.  For purposes of this motion, Carroll's state of mind is the relevant issue, not the actual validity of the court order.

[4] Although the plaintiff's 56.1 Statement contends that the description of the locksmith's and the movers' actions is hearsay, it is based on Cooper's observations, as recounted in her deposition.

Heilbut saw Cooper sitting in the car and also observed people walking in and out of the apartment carrying property and boxes. He admits he was upset at what he saw.  Heilbut approached the car and hit the window of the car with his fist to alert Cooper to his presence.[5]  Immediately afterwards he went inside the apartment.  Cooper was terrified and called 911 from her cellular telephone.  She told the 911 operator that she was calling for the second time, and that Heilbut had tried to kick in the window next to her face and had menaced her.  She also told the operator that she was frightened and that Hailbut was behaving violently and aggressively.  She stated that she needed the police as quickly as possible.

   Carroll and three other police officers soon arrived at the apartment.  Cooper told Carroll that Heilbut had tried to kick in the car window next to her head and kicked the car door.  She also told him that Heilbut had hollered and screamed at her and that he had "scared the living day lights" out of her.  She was shaking and frightened when she spoke to the police.  The security guard, who was inside the car with Cooper, also told Carroll that Heilbut had kicked the window and door of the car. Carroll looked at the security car and saw that there were scuff

---

[5] Defendants claim that Heilbut approached the car and kicked the window and door on Cooper's side several times, leaving black scuff marks, and point to Cooper's deposition testimony as evidence.  In his deposition, however, the plaintiff admits only that he hit the window to alert Cooper.

marks on the window.[6]

Heilbut was on the telephone inside the apartment when two police officers entered the apartment and ordered him to go outside the apartment.  The police officers pulled him out of the apartment and onto the sidewalk.[7]  Heilbut protested "emphatic[ally]" and loudly to the police officers and to the crowd that had formed on the street to watch, about the inadequate accountability and security surrounding the removal of his property, and made references to Nazi Germany.[8]  He also tried to grab a woman passing by on the sidewalk.[9]  A struggle ensued, Heilbut was handcuffed on the sidewalk, and he ended up

---

[6] The plaintiff's 56.1 Statement contends that all the statements regarding Carroll's conversation with Cooper and the security guard are hearsay, but the statements are relevant to Carroll's state of mind and are admissible for the fact that they were made to him.  Plaintiff also asserts that the statement regarding the scuff marks is hearsay, but the statement is based on Carroll's own observations.

[7] There is significant dispute between the parties as to the exact events leading up to Heilbut being handcuffed.  The defendants state that the police officers encountered Heilbut on the sidewalk, rather than going inside the apartment to bring him out.  The plaintiff himself stated in his deposition that although the police officers did enter his apartment, once they ordered him outside, he obeyed.  In opposing summary judgment, however, the plaintiff relies on Cooper's deposition testimony to support the claim that the police officers forcibly pulled Heilbut from the doorway of his apartment onto the sidewalk.

[8] The parties dispute Heilbut's exact behavior while he was on the sidewalk, with the defendants claiming that Heilbut was acting in a "deranged and erratic manner" and shouting at people, and the plaintiff stating that he was simply protesting in a loud voice.

[9] Defendants also claim that Heilbut tried to hit Carroll, but Heilbut flatly denies this.  While Heilbut's 56.1 Statement denies that he grabbed the woman, he provides no evidence to the contrary.

on the ground.  In testimony that is much disputed by the defendants, Heilbut states in his deposition that after handcuffing him, Carroll then

> pulled me up from the street, took me by the front of my shirt, and swearing and cursing, using foulest language, forced me back into my apartment and ultimately pinned me against the wall of the living room and began to crush me with his full weight and arm at right angles, forearm that is, at right angles, or right angle to my chest, and, as I say, he was putting his full weight against my body at the level of the heart and lungs.

Heilbut, however, did not suffer any physical injuries as a result of this encounter.

Carroll determined, based on the report from Cooper and his observations of Heilbut, that Heilbut was an emotionally disturbed person (EDP) and needed to be removed to the hospital for evaluation.  He believed that Heilbut could injure himself and be a danger to other individuals.  An ambulance was called, and Heilbut was taken to St. Luke's Hospital for a psychiatric evaluation.  Heilbut had no visible injuries, and he did not make any complaints to the police or the EMS technicians about the handcuffs placed on him.

No criminal charges were brought against Heilbut.  He has never been diagnosed with any psychiatric condition as a result of the interaction with police that day, nor has Heilbut voluntarily sought any psychiatric or other mental health counseling or help.

Procedural History

    Heilbut filed this action on June 8, 2004.  His Section 1983 claims assert that defendants violated his federal constitutional right to be free from detention without probable cause and from the use of excessive force.  Heilbut also added claims under New York State law of false arrest, false imprisonment, assault, battery, excessive use of force, malicious prosecution, and intentional infliction of emotional distress.  Heilbut brought a Monell claim against the City and a New York State law claim for negligent training.

    At a conference on November 12, 2004, as reflected in the written Order of November 15, the plaintiff was ordered to provide his medical release forms to the defendants by December 3.  On February 18, 2005, the case was stayed due to plaintiff's filing for bankruptcy.  When the bankruptcy filing was dismissed with prejudice, the action was restored to the active docket through an Order of September 21, 2005.  The plaintiff was given an opportunity to provide any remaining medical release forms to the defendants by September 28, 2005.  On December 2, 2005, the defendants wrote to advise the Court that plaintiff's responses to the defendants' discovery requests, including the authorizations to obtain medical records, were long overdue.  In a telephone conference held on December 9 to address these problems and their impact on the schedule of the case, plaintiff's counsel represented that the plaintiff would not be providing the authorizations and was withdrawing any claim for

damages based on physical injury.  The possibility of a claim for damages based on claims for emotional distress unsupported by any medical evidence was left open.

After fact discovery, defendants filed this motion for summary judgment on March 21, 2006.  Following the plaintiff's May 5 death, however, the motion was dismissed without prejudice.  On August 10, 2006, the Estate of Francis Heilbut, by Executrix Gena Rangel, was substituted as the plaintiff and the motion was reinstated.

Discussion

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Rule 56(c), Fed. R. Civ. P.  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings.  Rule 56(e), Fed. R. Civ. P.; accord Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

The motion for summary judgment on Heilbut's federal claims will be addressed first. Because the defendants are entitled to summary judgment on each of the federal claims, the Court declines to exercise supplemental jurisdiction over the plaintiff's claims for assault, battery, and negligent training. Summary judgment will be entered for the defendants on the remaining state law claims for the reasons described below.

1. False Arrest and False Imprisonment

Heilbut brings claims for false arrest and false imprisonment under the Fourth Amendment.[10] Allegations of unconstitutional false arrest are analyzed by "look[ing] to the law of the state in which the arrest occurred." Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006). The elements of a claim for false arrest under New York law are that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise

---

[10] Plaintiff sets out in his complaint claims for both false arrest and false imprisonment. The two claims are usually treated as a single claim. In this case, it is not entirely clear whether plaintiff is claiming false arrest and false imprisonment as a single claim arising out of plaintiff's detention and hospitalization, or whether they are being brought as distinct claims, based respectively on the initial seizure and the later hospitalization. See Kerman v. City of New York, 261 F.3d 229, 237-41 (2d Cir. 2001). Unlike in Kerman, however, where the police decided to hospitalize the plaintiff more than an hour after the initial seizure, id. at 240, here the decision to seize and to hospitalize occurred essentially simultaneously. Because the elements of the two claims are the same, they will be treated together here.

privileged." Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (citation omitted). A claim for false arrest or false imprisonment fails when the arresting officer had probable cause to make the arrest. Jaegly, 439 F.3d at 152; Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). This is also true in the context of seizures made for the purpose of involuntary hospitalization. See Anthony v. City of New York, 339 F.3d 129, 137 (2d Cir. 2003).

Probable cause for involuntary hospitalization is found "only if there are reasonable grounds for believing that the person seized is dangerous to [himself] or to others." Id. (citation omitted).[11] The probable cause inquiry asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (citation omitted). An arresting officer has probable cause to seize a person when they have "information gleaned from informants[,] . . . normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted). In making a probable cause determination, "an identified citizen informant is presumed to be reliable." Id. (citation omitted).

---

[11] New York law provides that a police officer can "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." Kerman, 261 F.3d at 240 n.8 (quoting N.Y. Mental Hyg. Law § 9.41). The Fourth Amendment's "objective reasonableness standard is applied to police discretion under this section." Id.

Taking the facts in the light most favorable to Heilbut, the defendants are entitled to summary judgment on Heilbut's claim that the defendants violated his Fourth Amendment rights by seizing him and delivering him to a hospital for a psychiatric examination.  Heilbut has not offered evidence that would raise a question of fact as to whether the defendants' actions were reasonable and supported by probable cause.  The undisputed evidence is that Carroll arrived at 685 West End Avenue to respond to Cooper's report that Heilbut had menaced her and was behaving violently and aggressively.  He learned that Heilbut had hit Cooper's car window, saw scuff marks to confirm this report, and observed Heilbut talking loudly and emphatically protesting to the police about the removal of possessions from the apartment despite the existence of a court order permitting the removal.  Heilbut was calling out to people passing by on the street, and dozens of people had crowded around to watch.  Heilbut compared the manner in which his property was being taken to how citizens were treated in Nazi Germany.  At one point, Carroll saw Heilbut try to grab a woman by the arm in an attempt to get her attention.  Given the undisputed evidence of Cooper's report and Heilbut's behavior before the police officers, Heilbut has failed to raise a material issue of fact as to the reasonable grounds possessed by Carroll to believe that Heilbut presented a risk of danger to himself or others.

Heilbut argues that the defendants have not shown that he was actually suffering from a mental illness at the time of his

hospitalization, distinguishing himself from the plaintiff in Anthony who suffered from Down Syndrome.  See Anthony, 339 F.3d at 132.  Whether there is probable cause is determined from "the facts known by the arresting officer at the time of the arrest." Jaegly, 439 F.3d at 153 (citing Devenpeck v. Alford, 543 U.S. 146, 153 (2004)).  The issue here is whether it was objectively reasonable for Carroll to determine that Heilbut presented a risk of danger to himself or others if not seized and hospitalized. Heilbut has not raised an issue of fact as to that determination.

Even if it were possible to find that Heilbut had raised a question of fact regarding the existence of probable cause to seize him, Carroll and the other individual defendants would be entitled to qualified immunity.  Qualified immunity for claims brought through Section 1983 arises when an official's conduct did not violate "clearly established" law.  Pena v. DePrisco, 432 F.3d 98, 107 (2d Cir. 2005) (citation omitted).  To determine whether qualified immunity applies, a court must consider:

> (1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Id. at 115 (citation omitted).  In the false arrest context, summary judgment based upon qualified immunity is appropriate when "the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest."

13

Martinez, 202 F.3d at 635 (citation omitted).

It is clearly established in this jurisdiction that the state cannot involuntarily confine a person unless there is probable cause to believe that the person poses a danger to himself or to others. Glass, 984 F.2d at 58. In light of Cooper's report of Heilbut's attack on her and Heilbut's behavior in front of the police officers, the most favorable finding that a rational jury could make for the plaintiff is that reasonable police officers could have disagreed as to whether Heilbut posed a danger to himself or to others around him, including Cooper. Thus, at a minimum, the defendants are entitled to qualified immunity for their actions, and their motion for summary judgment on the Fourth Amendment claim based on Heilbut's false arrest and false imprisonment is granted.

2. Excessive Force

Heilbut also claims that the officers used excessive force in violation of the Fourth Amendment.[12] Specifically, Heilbut

---

[12] Heilbut does not specify the Amendment under which he brings this claim. "[E]xcessive force claims must be analyzed under the rubric of the constitutional right that is most directly implicated by the facts giving rise to the claim." Nimely v. City of New York, 414 F.3d 381, 390 n.7 (2d Cir. 2005). Contrary to the defendants' assertion that the Fourteenth Amendment should apply because Heilbut was not an arrestee nor an inmate, "[a]ll claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Kerman, 261 F.3d at 238-39 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). In Kerman, the Second Circuit applied the Fourth Amendment reasonableness standard to an excessive force claim brought by a non-arrestee who was taken to a

claims that after being handcuffed, he was brought inside the apartment, where Carroll cursed at him and pinned him against the wall.  Police officers' application of force is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004) (citing Graham, 490 U.S. at 397).  "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment."  Id. at 108 (citing Graham, 490 U.S. at 396).

Defendants contend that Heilbut's excessive force claim fails because he was not physically injured.  The standard under the Fourth Amendment, however, is not whether the force used was de minimis or serious, but whether it was "objectively unreasonable."  While the amount of recovery may be limited where a litigant did not suffer physical injury, "a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."  Amato v. City of Saratoga Springs, 170 F.3d 311, 317 (2d Cir. 1999).  While Heilbut is barred in this case from pursuing damages for physical injuries or even psychological injuries that would require support through medical evidence, he may still seek compensatory damages for emotional injury arising from the use of excessive force.

---

psychiatric hospital for examination.  Id.

While ordinarily the issue of reasonableness is a fact question to be resolved by a jury, viewing the evidence in the light most favorable to the plaintiff, Heilbut has not raised a material issue of fact as to reasonableness of the officers' actions here.  Heilbut was upset and calling out to a crowd, he tried to grab a woman on the sidewalk, and the police officers had just received the report from Cooper that he had menaced her.  As the officers attempted to subdue a person whom they believed to be an emotionally disturbed person, Carroll used foul language and pushed his weight onto Heilbut while he was leaned against the wall.  Although Heilbut was an elderly man, he received no physical injuries at all from the encounter and did not complain of any pain when placed in the ambulance or when taken to the hospital immediately afterwards.  Considering the undisputed evidence supporting Carroll's determination that Heilbut was a potentially dangerous person requiring hospitalization and considering the facts regarding the use of force in the light most favorable to plaintiff, no reasonable juror could find that it was objectively unreasonable for the officers to use the amount of force they did in subduing Heilbut.

In any event, the officers would be entitled to qualified immunity on this claim, under the standard already described earlier in this Opinion, if Heilbut could be said to have raised an issue of fact as to the reasonableness of the officers' actions.  The most favorable finding that a rational jury could make for the plaintiff is that reasonable officers would disagree

as to whether it was reasonable in these circumstances to pin Heilbut against the wall as he has described occurred here.

3. Municipal Liability

Heilbut's federal claims against the City must also be denied.  Such claims require the plaintiff to prove an underlying violation of his federal constitutional rights.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  Since Heilbut has failed to show that there is a material question of fact regarding any violation of his rights under federal law, the claims against the City must fail as well.

4. State Law Claims

Heilbut asserts several state law claims against both the City and Carroll.  While Heilbut has withdrawn his claims against the City under a theory of respondeat superior, state law claims for false arrest and false imprisonment, assault, battery, and intentional infliction of emotional distress against Carroll and the individual defendants, and also a negligent training claim against the City, remain.

The plaintiff's state law claims for assault, battery, and malicious prosecution have not been mentioned by the parties in this motion for summary judgment.  The basis for the malicious prosecution claim is uncertain since no charges were filed against Heilbut.  <u>See</u> <u>Martinez v. City of Schenectady</u>, 97 N.Y.2d 78, 84 (2001) ("To obtain recovery for malicious prosecution

17

[under New York law], a plaintiff must establish that a criminal proceeding was commenced . . . .").

Heilbut's false arrest and false imprisonment claims must be dismissed because, as discussed earlier in the Opinion, the police officers had probable cause to seize and deliver Heilbut to the hospital.  Heilbut's claim for intentional infliction of emotional distress must also be dismissed.  Under New York law, such a claim requires "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress."  Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001) (citation omitted).  The standard is "rigorous, and difficult to satisfy," and Heilbut has failed to provide evidence to show conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Id. at 258 (citation omitted).

Where all federal claims have been dismissed, "a district court may decline to exercise supplemental jurisdiction." Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2006) (citation omitted).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  Id. (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  Since summary judgment

has been granted for all federal claims, the Court will not exercise supplemental jurisdiction over the remaining state law claims for assault, battery, and negligent training. They are dismissed without prejudice to being refiled in state court.

Conclusion

The defendants' motion for summary judgment is granted with respect to all claims except the state law claims of assault, battery, and negligent training, which are dismissed without prejudice. The Clerk of Court shall close the case.

SO ORDERED

Dated:   New York, New York
         October 2, 2006

                                          _____
                                                  DENISE COTE
                                          United States District Judge